IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC., a New York Corporation, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 3:08-1141 |
| MICHAEL D. TANGREDI, MICHAEL G. TANGREDI, a/k/a MICHAEL SANTANIELLO, MINC CONCEPTS, an unincorporated entity M. TANGREDI RESTAURANTS, INC., and John Does 1 through 10, | ) ) ) ) ) ) | Judge Nixon Magistrate Judge Bryant |
| Defendants. | ) | |

## MEMORANDUM ORDER

Pending before the Court is Plaintiff American Express Travel Related Services Company, Inc.'s ("Plaintiff" or "American Express") Motion for Summary Judgment and Other Relief ("Plaintiff's Motion") and supporting papers (Doc. Nos. 20-23), to which neither Defendant Michael D. Tangredi ("Tangredi"), Defendant Michael G. Tangredi ("Tangredi, Jr."), nor Defendant Minc Concepts (collectively, "Defendants") has made a response.[1] Also pending before the Court is Defendant Tangredi, Jr. and Defendant Tangredi's Motions to Dismiss ("Defendants' Motions"). (Doc. Nos. 31 & 32.) Plaintiff filed a Preliminary Opposition to Defendants' Motions.

---

[1] All action against Defendant M. Tangredi Restaurants, Inc. ("Tangredi Restaurants") has been stayed per that Defendant's Notice of Bankruptcy. (Doc. No. 26.)

-1-

(Doc. No. 33.)

For the following reasons, Plaintiff's Motion is **GRANTED** and Defendants' Motions are **DENIED.** The Court therefore **ENTERS DEFAULT JUDGMENT** against Defendant Minc Concepts. The Court **DIRECTS** the Clerk to **ENTER DEFAULT** against Defendant Michael D. Tangredi and the Court **ENTERS DEFAULT JUDGMENT** against Defendant Michael D. Tangredi. The Court **GRANTS summary judgment** against Defendant Michael G. Tangredi. This case is hereby **REFERRED** to the Magistrate for a determination of damages.

Also pending are Defendant Tangredi, Jr. and Defendant Tangredi's Motions for a Hearing on their Motions to Dismiss ("Defendants' Motion for Hearing"). (Doc. Nos. 52 & 53.) Plaintiff filed a response. (Doc. No. 54.) Because, absent extraordinary circumstances, the Court renders its decision on both a motion for summary judgment and a motion to dismiss on the papers submitted, Defendants' Motion for Hearing is **DENIED**.

## I.     BACKGROUND[2]

### A.     Factual Background

Plaintiff American Express brings this Complaint against, among others, Defendant Michael D. Tangredi ("Tangredi"), president and controlling shareholder of M. Tangredi Restaurants, Inc. ("Tangredi, Inc."), now in bankruptcy. Tangredi's business address is 2323 Elliston Place, Nashville, Tennessee. Plaintiff also brings suit against Michael G. Tangredi ("Tangredi, Jr."), Tangredi's nineteen-year-old son, whose address is 2325 Elliston Place, Apt. 104, Nashville, Tennessee. Tangredi, Jr. has been an employee of Tangredi's businesses, although he disputes that

---

[2] Unless otherwise noted, all facts are taken from Plaintiff's Statement of Undisputed Facts in Support of its Motion for Summary Judgment. (Doc. No. 22.) Defendants made no reply to Plaintiff's Statement of Facts; however, for the purposes of this section, the Court notes when facts contained in Defendant Michael G. Tangredi's Motion to Dismiss conflict with Plaintiff's Statement of Facts. (See Doc. No. 31.)

he is or has ever been an officer or shareholder of Tangredi, Inc. Plaintiff states that one or more of the Defendants engaged in a scheme to defraud Plaintiff by using a fraudulently obtained American Express card to run fifteen charges, each in an amount between $28,750.00 and $98,750.00, through American Express accounts established and controlled by one or more of the Defendants, even though no goods or services were sold. Through this scheme, Plaintiff asserts Defendants illegally obtained $1,145,955.65 in cash from Plaintiff, none of which has been repaid.[3]

Tangredi, Inc., as an operator of restaurants, had been an American Express merchant accepting the American Express card for goods and services rendered since 2006. As an American Express merchant, Tangredi, Inc. received payment from American Express through electronic transmission to a bank account controlled by Tangredi for each of the charges that it processed and electronically transmitted to American Express. Tangredi was responsible for the Tangredi, Inc. merchant account.

Defendant Minc Concepts ("Minc") is an unincorporated entity Plaintiff believes is owned, controlled, and operated by Tangredi, Jr. Minc became an American Express merchant authorized to accept the American Express card on June 8, 2008. Minc's application to become an American Express merchant was made over the internet and stated that Minc operates a bar or nightclub.

---

[3] In the course of this litigation, Plaintiff identified four additional charges that it maintains are fictitious and made by one or more of the Defendants. In July 2008, three charges of $61,900.00, $92,851.00, and $98,000.00 each were made on the Tangredi AmEx Charge Card through the merchant account of Bada Bing Kihei, another restaurant owned by Tangredi in Hawaii. A fourth charge of $38,980.00 was made on the Laura Lightfoot charge card via the same merchant account. American Express was able to recover most of those charges; however, $70,773.20 remains due on the Bada Bing Kihei merchant account. Plaintiff mentions these Hawaiian charges for the first time in its summary judgment papers. (Compare Doc. No. 1, and Doc. Nos. 20-23.) Although Plaintiff may amend its pleading once as a matter of course, see Federal Rule of Civil Procedure 15(a)(1), it may not include a new claim implicating a different merchant account on a motion for summary judgment. See, e.g., Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) (the proper procedure for a plaintiff to raise a new claim at the summary judgment stage is through a motion to amend the complaint). Therefore the Court will not examine these additional charges here.

Plaintiff now believes no such bar or nightclub exists. The address listed for Minc on its application is the home address of Tangredi, Jr.: 2325 Elliston Place, Apt. 104, Nashville, Tennessee. The name of the authorized signer for the Minc merchant account is "Michael Santaniello," which Plaintiff believes to be a fictitious name used by Tangredi or Tangredi, Jr. Plaintiff asserts that "Santaniello" is the maiden name of Maria Tangredi—the mother of Tangredi, Jr. and the wife of Tangredi. Minc received payment from American Express through electronic transmission to a bank account that Plaintiff asserts was controlled by Tangredi and/or Tangredi, Jr. Plaintiff states that Tangredi and/or Tangredi, Jr. established the Minc merchant account to perpetrate a fraud on Plaintiff. Tangredi, Jr. denies that he is associated in any way with Minc. Defendant Minc has not responded to this lawsuit at all.

Via application over the internet, which Plaintiff claims was instigated solely by Tangredi and/or Tangredi, Jr., several American Express charge cards under one primary account were opened. The primary cardholder on this account was Laura Lightfoot ("Lightfoot"), an employee at one of Tangredi, Inc.'s restaurants. A supplemental card in Tangredi, Jr.'s name was issued ("Tangredi AmEx Charge Card"). Several other supplemental cards were issued, including in the name of Tangredi and Tangredi's wife, Maria Tangredi. Plaintiff asserts that Lightfoot had no part or knowledge in the opening of this cardmember account. Tangredi, Jr. states that Lightfoot knew of and was present for the opening of the account and intended the card to be used for a joint business venture.

On May 17, 22, and 30, 2008, three charges for $32,500.00, $74,500.00, and $28,750.00 respectively (totaling $135,750.00) were made on the Tangredi AmEx Charge Card through the American Express merchant account for Tangredi, Inc. The charge description for each of these

charges was listed as "M. Tangredi's Restau[rant]." Plaintiff asserts that the charges were fictitious in that nothing was bought or sold for the amounts in question. Plaintiff claims that Tangredi and/or Tangredi, Jr. processed the charges through the Tangredi, Inc. merchant account using the fraudulently obtained Tangredi AmEx Charge Card and then received payment of $135,750.00 from American Express for the charges. Plaintiff states that the sole purpose of these charges was to have American Express pay money to the Tangredis, which they never repaid, in direct violation of the "Terms and Conditions for American Express Card Acceptance" (the "Merchant Agreement").[4] (See Doc. No. 23-5.) This type of cash flow scheme is known as "factoring."

Beginning June 8, 2008 and continuing through June 27, 2008, twelve charges totaling $1,011,171.92 were made on the Tangredi AmEx Charge Card through the Minc American Express merchant account. The charge description for each was again "M. Tangredi's Restau[rant]." The charges are as follows:

| | |
|---|---|
| 6/09/08 | $97,500.00 |
| 6/10/08 | $98,500.00 |
| 6/13/08 | $68,500.00 |
| 6/15/08 | $80,000.00 |
| 6/17/08 | $89,750.00 |
| 6/18/08 | $69,540.00 |
| 6/18/08 | $89,625.00 |
| 6/18/08 | $97,500.00 |
| 6/25/08 | $39,500.00 |
| 6/27/08 | $98,750.00 |
| 6/27/08 | $87,456.92 |
| 6/27/08 | $94,550.00 |

(Doc. No. 23-3.) Plaintiff asserts that these charges were fraudulently "factored" by Tangredi

---

[4] The Merchant Agreement states in relevant part: "Prohibited Use. You must not accept the Card for . . . (viii) amounts that do not represent bona fide sales of goods or services at your Establishments, e.g. purchases at your Establishments by your owners (or their family members) or employees contrived for cash flow purposes." (Doc. No. 23-5, at 2-3.)

and/or Tangredi, Jr. using the same method as the charges processed through the Tangredi, Inc. merchant account.

In late June 2008, Plaintiff tried to reverse the payments made to the Tangredi, Inc. and Minc merchant bank accounts for these charges. American Express could only retrieve $975.27 from those accounts; the rest of the money was gone. Also, American Express has not collected any portion of the outstanding balance of the Tangredi AmEx Charge Card.

At no time did any of the Defendants dispute any of these charges as being unauthorized or improperly made by any person.

B.     Procedural Background

Plaintiff American Express filed its Complaint on November 26, 2008 for non-payment of $1,145,955.65 in what it claims are fraudulent credit card charges. (Doc. No. 1.)

On December 19, 2008, Plaintiff filed a Motion for Entry of Default against all Defendants. (Doc. No. 9.) On December 22, 2008, Defendant Tangredi, Jr., acting *pro se*, filed an Answer which stated in response to every paragraph of the Complaint except paragraphs 3, 5, and 8: "THE DEFENDANT DOES NOT KNOW CERTAINLY OF THE ACCUSATION HEREIN, THEREFORE THE DEFENDANT DENIES THE ALLEGATION." (See Doc. No. 10.) No other Defendant filed a responsive pleading at that time.

On February 2, 2009, the Clerk entered Default in Part against Defendants Minc and Defendant Tangredi, Inc. per Federal Rule of Civil Procedure 55(a), allowing Plaintiff to proceed with a motion for default judgment under Federal Rule of Civil Procedure 55(b). (Doc. No. 15.) The Clerk refused to enter default against Defendant Tangredi, Jr., as he had filed an Answer, although the Answer was untimely. (Id.) The Clerk also refused to enter default against Defendant

Tangredi because Plaintiff failed to file an affidavit of non-military service. (Id.) The Clerk allowed Plaintiff to submit a renewed request for entry of default upon satisfaction of this requirement. (Id.) Plaintiff subsequently filed the required affidavit of non-military service. (Doc. Nos. 16 & 17.)

On February 6, 2009, Defendant Tangredi, Inc. filed a Notice of Chapter 7 Bankruptcy. (Doc. No. 19.) After ordering Plaintiff to show cause as to why the case should not be immediately stayed under 11 U.S.C. § 362, this Court stayed proceedings against Defendant Tangredi, Inc. only. (Doc. No. 26.)

On February 12, 2009, Defendant Tangredi filed an Answer. (Doc. No. 18.) In that Answer, Defendant Tangredi states that he "was acting based on a misconception that one answer would be sufficient for all defendants involved" and prays that the Court accept his late Answer. The Answer consists of one paragraph, stating "a general denial of all claims of wrong-doing." (Id.) Defendant Tangredi asserts that this answer applies both to himself and to Defendant Tangredi, Inc. as its sole corporate officer. (Id.) Because proceedings as to Defendant Tangredi, Inc. are stayed, the Court will not now determine whether Defendant Tangredi's Answer is sufficient for Defendant Tangredi, Inc.

On March 19, 2009, Plaintiff filed a Motion for Summary Judgment and Other Relief, requesting summary judgment against Defendant Tangredi, Jr., entry of a default and default judgment against Defendant Tangredi, and entry of default judgment against Defendant Minc. (Doc. Nos. 20-23.) None of these Defendants filed a response to this motion.

On September 16, 2009, Defendants Tangredi, Jr. and Defendant Tangredi, both acting *pro se*, filed Motions to Dismiss. (Doc. Nos. 31 & 32). On March 24, 2010, Defendants Tangredi, Jr.

-7-

and Defendant Tangredi filed Motions for a Hearing on their Motions to Dismiss. (Doc. Nos. 52 & 53.) On March 31, 2010, Plaintiff filed a response to the Motion for Hearing. (Doc. No. 54.)

This Court has jurisdiction over this matter under 28 U.S.C. § 1332.

## II. DEFAULT JUDGMENT AGAINST DEFENDANT MINC CONCEPTS AND DEFENDANT MICHAEL D. TANGREDI

### A. Default Judgment Against Defendant Minc Concepts

The Clerk entered default against Defendant Minc on February 2, 2009. (Doc. No. 15.) Entry of a default is a prerequisite to entry of a default judgment under Rule 55(b). Ramada Franchise Sys., Inc. v. Baroda Enter., LLC, 220 F.R.D. 303, 305 (N.D. Ohio 2004). Federal Rule of Civil Procedure 55(b) allows the Court to enter a default judgment against a party who has failed to plead or otherwise defend. Fed. R. Civ. Pro. 55(b). Defendant Minc has not answered or otherwise responded to this lawsuit. Therefore, the Court **ENTERS DEFAULT JUDGMENT** against Defendant Minc Concepts.

Plaintiff requests a default judgment in the sum of $1,216,728. This amount represents the original $1,145,955.65 requested against all Defendants in Plaintiff's Complaint (Doc. No. 1, at 1), plus an additional $70,773.20 that Plaintiff discovered in the course of the litigation and now asserts was charged by one or more of the Defendants through a restaurant owned by Tangredi in Hawaii. The Court may hold a hearing or make a referral when, to enter or effectuate judgment, it needs to: "(a) conduct an accounting; (b) determine the amount of damages; (c) establish the truth of any allegation by evidence; or (d) investigate any matter." Fed. R. Civ. Pro. 55(b). The Court therefore **REFERS** the question of damages against Defendant Minc Concepts to the MAGISTRATE for ALL FURTHER PROCEEDINGS.

### B. Entry of Default and Default Judgment Against Defendant Michael D. Tangredi

Per its February 2, 2009 Order, the Clerk allowed Plaintiff to renew its Motion for Entry of Default against Defendant Tangredi upon the filing of the required affidavit of non-military service. (See Doc. No. 15.)  Plaintiff filed said affidavit (Doc. Nos. 16 & 17) and renews its Motion for Default in its summary judgment papers.  (See Doc. No. 20, at 1).

Almost two months after Plaintiff's Motion for Default, Defendant Tangredi filed an Answer.  (Doc. No. 18.)  That Answer consisted of one paragraph, in which Defendant Tangredi asked the Court to accept his late answer, asserting that he had not previously filed a responsive pleading because he was "acting based on a misconception that one answer would be sufficient for all defendants involved."  (Id.)  Defendant Tangredi then stated a one sentence "general denial of all claims of wrong-doing."  (Id.)  A defendant who fails to answer within the time specified by the rules is in default even if that fact is not officially noted.  Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure, § 2692 (3rd ed. 2009).  That defendant must then request that the default be excused and, upon a showing of good cause, secure leave to answer before the court will recognize his responsive pleading.  Id.; see also Gray v. John Jovino Co., Inc., 84 F.R.D. 46, 47 (D.C. Tenn. 1979).  Courts interpret Federal Rule of Civil Procedure 55(c) liberally in order to avoid the onerous consequences of a default judgment.  See id., at 47.  Therefore, the Court hereby construes Defendant Tangredi's Answer (Doc. No. 18) as including a Motion to Set Aside Default brought per Federal Rule of Civil Procedure 55(c).

Federal Rule of Civil Procedure 55(c) allows the Court to set aside an entry of default "for good cause."  Fed. R. Civ. Pro. 55(c).  The decision to reverse an entry of default is within the sound discretion of the trial court, and entails a consideration of: "whether (1) the default was wilful, (2) a set-aside would prejudice plaintiff, and (3) the alleged defense was meritorious."

United Coin Meter Co., Inc. v. Seaboard Coastline R.R., 705 F.2d 839, 844 (6th Cir. 1983) (citations omitted). Defendant Tangredi's only offered excuse for his default is: "The defendant was acting based on a misconception that one answer would be sufficient for all defendants involved." (Doc. No. 18.) Under the equitable factors established in United Coin Meter, to rise to the level of wilful or culpable, "the conduct of defendant must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on judicial proceedings." Thompson v. Am. Home Assur. Co., 95 F.3d 429, 433 (6th Cir. 1996) (citing INVST Fin. Group, Inc. v. Chem-Nuclear Sys., Inc., 815 F.2d 391, 399 (6th Cir. 1987)). Assuming Defendant Tangredi's claim that he misunderstood that one answer, written *pro se* by his then eighteen or nineteen-year-old son, would suffice for all defendants, is true, and considering that Defendant Tangredi filed his Answer within a few days of the Clerk's Entry of Default (although two months after Plaintiff's Motion for Entry of Default), the Court cannot find that Defendant Tangredi's actions display an intent to thwart these proceedings or show reckless disregard for same.

The Court must also consider the prejudice to the non-defaulting party that would result from the reversal of an entry of default. See 705 F.2d at 844. More than delay is required. 95 F.3d at 433-34. This delay must result in "tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion." Id. Considering that over one million dollars is at issue, the money is currently unaccounted for, and Defendants are proceeding with little attention to the orderly workings of this Court as laid out in the Federal Rules of Civil Procedure, the Court finds Plaintiff would be prejudiced by continued delay.

Furthermore, the Court considers whether or not the defaulted party has established a meritorious defense. See 705 F.2d at 844. To establish a meritorious defense, the defendant must

-10-

"state a defense good at law which is sufficient if it contains even a hint of a suggestion which, proven at trial, would constitute a complete defense." 95 F.3d at 434 (quotations and citation omitted). The only defense set forth by Defendant Tangredi in his Answer is a "general denial of all claims of wrong-doing." (See Doc. No. 18.) A blanket denial of the allegations of the Complaint, without more, cannot even hint at a valid defense at law. Even if the Court were to very liberally construe Defendant Tangredi's Motion to Dismiss (Doc. No. 32) as advancing argument applicable to an answer, the only defense cognizable from that filing is: because the American Express merchant agreement does not provide for a personal guaranty on chargeback actions, Defendant is not liable for same. (See Doc. No. 32, at 2.) While there is the slim possibility that this argument might serve as a defense to Plaintiff's breach of merchant agreement claim, it is no defense to the other four tort claims articulated in the Complaint (see Doc. No. 1), and therefore cannot be a complete defense.

Weighing these factors, the Court finds that the balance does not support removing Defendant Tangredi's unofficial entry of default. Therefore, Plaintiff's Motion for Default and Entry of Default Judgment against Defendant Tangredi is **GRANTED**. The Court hereby **DIRECTS** the Clerk to **ENTER DEFAULT** against Defendant Michael D. Tangredi. Upon that entry, the Court **ENTERS DEFAULT JUDGMENT** against Defendant Michael D. Tangredi. The Court also **REFERS** the question of damages against Defendant Michael D. Tangredi to the MAGISTRATE for ALL FURTHER PROCEEDINGS.

### III.   DEFENDANT TANGREDI JR.'S MOTION TO DISMISS

Over six months after Plaintiff filed its Motion for Summary and Default Judgment, and without responding to that motion, Defendants Tangredi and Tangredi, Jr. filed Motions to Dismiss.

-11-

(Doc. Nos. 31 & 32.)  Because Tangredi has been determined to be in default, *supra*, his Motion to Dismiss will not be considered here.  Tangredi, Jr.'s Motion asserts that Plaintiff has failed to state a claim upon which relief can be granted.  (Doc. No. 31.)  Therefore the Court assumes that Defendant filed this Motion pursuant to Federal Rule of Civil Procedure 12(b)(6).  Fed. R. Civ. Pro. 12(b)(6) ("a party may assert the following defenses by motion: . . . (6) failure to state a claim upon which relief can be granted").  However, pursuant to Federal Rule of Civil Procedure 12(b), "[a] motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed."  Fed. R. Civ. Pro. 12(b).  Defendant Tangredi, Jr.'s Answer (Doc. No. 10), filed December 22, 2008, is a responsive pleading.  See Fed. R. Civ. Pro. 7(a)(2).  Defendant Tangredi Jr.'s Motion to Dismiss was filed after his responsive pleading and is therefore not procedurally valid.  Defendant's Motion is **DENIED**.

## IV.     SUMMARY JUDGMENT AGAINST DEFENDANT MICHAEL G. TANGREDI

### A.     Standard of Review

Summary judgment is appropriate when there is "no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Generally, summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Moses v. Providence Hosp. & Med. Ctr., 561 F.3d 573, 578 (6th Cir. 2009) (quoting Fed R. Civ. P. 56(c)).  A genuine issue of material fact is "evidence such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of showing the absence of a genuine issue of material fact

as to at least one essential element of the non-moving party's case, Celotex v. Catrett, 477 U.S. 317, 322-23 (1986), and that the evidence "is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52. Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth "specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The Court must draw all reasonable inferences in favor of the non-moving party. See id.

B.  Analysis

Plaintiff argues that it has shown, and Defendant Tangredi, Jr. has not proffered facts sufficient to dispute, that no genuine issue of fact remains for trial. In support of its motion for summary judgment, Plaintiff filed an Affidavit by Edmond Garabedian ("Affidavit"), custodian of records at American Express. (Doc. No. 23.) The Affidavit attaches a copy of the Tangredi AmEx Charge Card account statements listing the $135,750.00 (Doc. No. 23-2, at 4) and $1,011,171.92 (Doc. No. 23-3, at 5) charged in Tangredi, Jr.'s name. The Affidavit also attaches a chart with the fraud chargebacks undertaken by Plaintiff against the $135,750.00 balance—this document shows the merchant account for these charges as Tangredi's Italian, one of Tangredi, Inc.'s Nashville restaurants. (Doc. No. 23-4, at 2.) Another chart attached to the Affidavit has the fraud chargebacks undertaken by Plaintiff against the $1,011,171.92 balance—this document shows the merchant account for those charges to be Minc Concepts. (Doc. No. 23-4, at 3.) Plaintiff also attaches a copy of the Merchant Agreement. (Doc. No. 23-5.) The Affidavit establishes that the address given for the Minc merchant account was the home address of Tangredi, Jr., 2325 Elliston Place, Apt. 104, Nashville, Tennessee, and the name of the authorized signer for the Minc merchant account was "Michael Santaniello." (Doc. No. 23, at 6.)

-13-

Federal Rule of Civil Procedure 56(e)(2) states:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleadings; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Tangredi, Jr. did not file a response to Plaintiff's Motion. Six months later, however, Tangredi, Jr. filed a Motion to Dismiss. (Doc. No. 31.) This motion to dismiss was procedurally deficient and has been denied, *supra*. However, in the interests of justice and judicial efficiency, the Court examined if it might be appropriate to consider Defendant Tangredi, Jr.'s signed, *pro se* motion to dismiss as the equivalent of an affidavit opposing Plaintiff's summary judgment motion. The Court concludes that it cannot.

On a motion for summary judgment, "[a] supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. Pro. 56(e). In the interests of efficiency, courts will often consider a document that meets the standards of Rule 56(e) as an affidavit for the purposes of a summary judgment motion. For example, a verified complaint may be treated as affidavit for the purposes of summary judgment if that verified complaint satisfies the standard set out in Rule 56(e). See Conaway v. Smith, 853 F.2d 789, 792 (10th Cir. 1988). An unsworn affidavit, however, may not be used to support or oppose a motion for summary judgment. See Pollock v. Pollock, 154 F.3d 601, 611-12 (6th Cir. 1998). There is a statutory exception which allows an unsworn declaration to serve as a sworn declaration if it is signed by the affiant under penalty of perjury. 28 U.S.C. § 174 (1992).

Tangredi, Jr.'s Motion to Dismiss (Doc. No. 31) does contain facts which appear to be based

-14-

upon personal knowledge; however, the Court cannot conclude that such facts are admissible in evidence. Tangredi, Jr. submitted the Motion to Dismiss on his own behalf and it is signed by him. (See Doc. No. 31, at 6.) However, the document is not sworn, nor is it attested to under penalty of perjury sufficient to satisfy the statutory exception. See 28 U.S.C. § 1746 ("such matter may, with like force and effect, be supported . . . by the unsworn declaration . . . in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form: . . . (1) 'I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date). (Signature)'."). Therefore, the Court cannot accept Defendant Tangredi, Jr.'s signed, *pro se* motion to dismiss as the equivalent of an affidavit opposing Plaintiff's summary judgment motion. See, e.g., Zainalian v. Memphis Bd. of Educ., 3 Fed. App'x 429, at **2 (6th Cir. 2001) ("As [plaintiff] neither verified his affidavit nor complaint, signed them under oath, nor signed them under penalty of perjury pursuant to 28 U.S.C. § 1746, the facts averred to therein lacked the force and effect of an affidavit for purposes of responding to a motion for summary judgment.").

Therefore, the Court concludes that Plaintiff's Motion for Summary Judgment is unopposed. Failure to file a timely response indicates that there is no opposition to the motion. L.R. 7.01(b) (2009). Defendant Tangredi, Jr.'s failure to respond to Plaintiff's Statement of Undisputed Facts, "indicate[s] that the asserted facts are not disputed for the purposes of summary judgment." L.R. 56.01(g). Against Defendant Tangredi, Jr., Plaintiff pleads claims of fraud, conversion, non-payment of credit card charges, unjust enrichment, and breach of merchant agreement. (See Doc. No. 1.) The Court thus treats Plaintiff's assertions of fact and law as undisputed. Once the moving party has shown the absence of a genuine issue of material fact as to at least one essential element

-15-

of the non-moving party's case, the burden shifts to the non-moving party to set forth "specific facts showing that there is a genuine issue for trial." 475 U.S. at 587. Defendant Tangredi, Jr. has not met this burden. The district court's power to grant dispositive motions because they are unopposed is firmly settled. See, e.g., Cacevic v. City of Hazel Park, 226 F.3d 483, 491-92 (6th Cir. 2000).

Therefore, the Court **GRANTS** Plaintiff's Motion and **ENTERS summary judgment** against Defendant Michael G. Tangredi. The Court **REFERS** the question of damages to the MAGISTRATE for ALL FURTHER PROCEEDINGS.

V.     CONCLUSION

For the foregoing reasons, Plaintiff's Motion is **GRANTED** and Defendants' Motions are **DENIED.** The Court **ENTERS DEFAULT JUDGMENT** against Defendant Minc Concepts. The Court **DIRECTS** the Clerk to **ENTER DEFAULT** against Defendant Michael D. Tangredi and the Court **ENTERS DEFAULT JUDGMENT** against Defendant Michael D. Tangredi. The Court **GRANTS summary judgment** against Defendant Michael G. Tangredi. This case is hereby **REFERRED** to the Magistrate for a determination of damages.

It is so ORDERED.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT